IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

R.T.,[1]

        Plaintiff,

v.                                                                 Case No. 18-4091-JWB

NANCY BERRYHILL,
*Acting Commissioner of Social Security,*

        Defendant.

**MEMORANDUM AND ORDER**

Plaintiff filed this action for review of a final decision of the Commissioner of Social Security denying Plaintiff's application for social security disability benefits. The matter is fully briefed by the parties and the court is prepared to rule. (Docs. 10, 12, 13.) The Commissioner's decision is REVERSED and REMANDED for the reasons set forth herein.

**I. Standard of Review**

The court's standard of review is set forth in 42 U.S.C. § 405(g), which provides that "the findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive." The Commissioner's decision will be reviewed to determine only whether the decision was supported by substantial evidence and whether the Commissioner applied the correct legal standards. *Glenn v. Shalala*, 21 F.3d 983, 984 (10th Cir. 1994). Substantial evidence requires more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept as adequate to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

---

[1] Plaintiff's initials are used to protect privacy interests.

Although the court is not to reweigh the evidence, the findings of the Commissioner will not be mechanically accepted. Nor will the findings be affirmed by isolating facts and labeling them substantial evidence, as the court must scrutinize the entire record in determining whether the Commissioner's conclusions are rational. *Graham v. Sullivan*, 794 F. Supp. 1045, 1047 (D. Kan. 1992). The court should examine the record as a whole, including whatever fairly detracts from the weight of the Commissioner's decision and, on that basis, determine if the substantiality of the evidence test has been met. *Glenn*, 21 F.3d at 984.

The Commissioner has established a five-step sequential evaluation process to determine disability. 20 C.F.R. § 404.1520; *Wilson v. Astrue*, 602 F.3d 1136, 1139 (10th Cir. 2010). If at any step a finding of disability or non-disability can be made, the Commissioner will not review the claim further. At step one, the agency will find non-disability unless the claimant can show that he or she is not working at a "substantial gainful activity." *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988). At step two, the agency will find non-disability unless the claimant shows that he or she has a severe impairment. At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled. *Id*. at 750-51. If the claimant's impairment does not meet or equal a listed impairment, the agency determines the claimant's residual functional capacity ("RFC"). 20 C.F.R. § 404.1520(e). The RFC assessment is used to evaluate the claim at both step four and step five. 20 C.F.R. § 404.1520(a)(4); § 404.1520(f), (g). At step four, the agency must determine whether the claimant can perform previous work. If a claimant shows that she cannot perform the previous work, the fifth and final step requires the agency to consider vocational factors (the claimant's age, education, and past work experience) and to determine whether the

claimant is capable of performing other jobs existing in significant numbers in the national economy. *Barnhart v. Thomas*, 124 S. Ct. 376, 379-380 (2003).

The claimant bears the burden of proof through step four of the analysis. *Blea v. Barnhart*, 466 F.3d 903, 907 (10th Cir. 2006). At step five, the burden shifts to the Commissioner to show that the claimant can perform other work that exists in the national economy. *Id*.; *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993). The Commissioner meets this burden if the decision is supported by substantial evidence. *Thompson*, 987 F.2d at 1487.

**II. History of Case**

*A. Summary of the evidence.*

In discussing his findings, the ALJ reviewed the testimony and the medical evidence. Plaintiff reported that he lived independently, previously caring for his father who had recently passed away. Plaintiff performs household chores, makes meals, attends church on Sunday, drives a car, shops in stores, and plays video games. Plaintiff is able to care for himself and care for family pets. (R. 18, 35-36 41, 270-73, 570.) Plaintiff testified that he is unable to work due to knee and back pain and his morbid obesity. Plaintiff testified that he has difficulty walking up and down stairs, can only stand for 20 to 25 minutes at a time because of his knees and can only lift 15 pounds. (R. at 31, 37, 44.) Plaintiff testified that he has anger issues, significant anxiety and depression. (R. at 33, 40, 45.) The ALJ determined that Plaintiff's testimony regarding the intensity, persistence and limiting effects of the symptoms was not entirely consistent with the medical evidence and other evidence. Notably, the ALJ determined that Plaintiff's reported daily activities were inconsistent with allegations of debilitating pain and depression. (R. at 18.) Therefore, the testimony was considered to the extent that it could be consistent with other objective medical evidence. (R. at 17.)

The medical records regarding physical impairments were limited. Plaintiff's BMI was determined to be 67.0 which meets the standard for obesity. The ALJ noted that SSR 02-1 states that obesity can cause limitations in functions such as standing, walking and lifting. Obesity can also cause other impairments to have greater limitations. In 2014, plaintiff had two visits with his primary care provider. Plaintiff complained of knee and back pain. The medical provider stated that "the best thing patient could do is lose a significant amount of weight." (R. at 537.) The examination showed no tenderness to palpation nor deformity in the knees. In February 2015, x-rays of Plaintiff's knees showed minimal degenerative osteophyte formation without significant degenerative change. (R. at 541.) No further x-rays have been taken although the record notes that no x-rays were taken due to his large size. (R. at 555.) In July 2015, x-rays of the spine were unremarkable. Plaintiff did not see his primary care physician again until June 2017, when he complained of knee and leg pain and a depressed mood. Plaintiff's physician started him on gabapentin for pain. (R. at 593.)

In July and November 2015, Plaintiff had two consultative physical examinations by Travis Rump, D.O. Plaintiff reported a history of diabetes to Dr. Rump, but the record does not contain previous treatment for the condition. In July, the examination included the findings that Plaintiff had a wide-based gait; +1 peripheral edema (trace or mild pitting); early erythema (redness) of the anterior shins; normal range of motion of all joints with no tenderness; negative straight leg raising bilaterally; no muscle spasms; normal grip strength; intact motor and sensory function; negative Romberg, a test for balance; no assistive device; mild difficulty with heel and toe walking; and moderate difficulty squatting. (R. at 17; 553-54). In November, Plaintiff still had a normal gait, but demonstrated limited bilateral knee flexion and reduced lumbar spine motion. (R. at 563.) It

4

was also noted that Plaintiff had "moderate-severe difficulty with orthopedic maneuvers." (R. at 565.)

During the period after the onset date, the medical records concerning mental health treatment are limited. However, there were significant records regarding mental health treatment during the years 2000 to 2008. In June 2017, Plaintiff's physician prescribed Seroquel after his complaints of agitation and depression. Plaintiff informed his physician that he had previously been prescribed Seroquel and it helped with his symptoms. There are no records of hospitalizations or mental health emergency room visits.

Plaintiff was evaluated by Stanley Mintz, Ph.D., at the request of the State agency. Dr. Mintz assessed Plaintiff with depressive disorder and generalized anxiety. Dr. Mintz found that although Plaintiff had a depressed mood and affect, Plaintiff showed intact formal judgment and reasoning capacity, fair immediate attention span, fair recent and remote memory, and could do simple math. (R. at 18.) Dr. Mintz opined that Plaintiff could understand simple and intermediate instructions, do unskilled work, has some difficulty relating to supervisors, no problem getting along with coworkers and cannot work with the public. The ALJ gave this opinion significant weight.

In February 2016, Plaintiff was evaluated by Jason Wells, Psy.D. At that evaluation, Plaintiff exhibited acceptable social behavior, a depressed mood, normal speech, logical and goal-directed thoughts, no indication of a thought disorder, minimal difficulty sustaining focus and concentration, intact recent and remote memory, and intact insight and judgment. (R. 571-73). Plaintiff also completed a three-step command without difficulty. Dr. Wells opined that Plaintiff could perform simple, repetitive tasks, but would require longer than normal to complete the tasks, would respond poorly to pressure at work, should avoid large crowds and extensive contact with

the public. (R. at 18.) The ALJ gave significant weight to Dr. Wells' opinion with the exception of discounting the opinion that Plaintiff would require longer to do simple tasks and respond poorly to work pressures.

Additionally, the agency psychological consultants, Thomas Locke, Ph.D., and Rosalie McMaster, Ph.D., reviewed the record and determined that Plaintiff can perform work involving one to two-step intermediate instructions and would do best with occasional interactions with supervisors and coworkers without interactions with the public. The ALJ afforded significant weight to these opinions.

*B. ALJ Ruling*. In March 2015, Plaintiff protectively filed an application for supplemental security income benefits, alleging disability onset of February 24, 2015. His claim was denied initially by the agency on August 26, 2015, and upon reconsideration on February 25, 2016. He then requested an evidentiary hearing, which was held before ALJ Richard Staples on July 27, 2017. The ALJ determined that Plaintiff was not disabled within the meaning of the Act.

In ruling on Plaintiff's claim, the ALJ noted at step one that Plaintiff had not engaged in substantial gainful employment since March 27, 2015, the application date. At step two, the ALJ found Plaintiff suffered from the following severe impairments: morbid obesity; minimal osteoarthritis in both knees; peripheral edema in lower extremities; diabetes; depressive disorder; and anxiety disorder. At step three, the ALJ found Plaintiff did not have an impairment that met one of the regulatory listings. In so finding, the ALJ found that Plaintiff had no more than mild limitations in activities of daily living; moderate limitations in understanding, remembering, or applying information; moderate limitations in concentration, persistence, and pace; and moderate limitations in interacting with others. (R. at 15.)

The ALJ determined that Plaintiff had the RFC to perform sedentary work with the following limitations: lift and carry 10 pounds frequently and 20 pounds occasionally; sit for 6 hours in a work day and stand and/or walk no more than 2 hours; he cannot climb ladders, ropes or scaffolds; he can never crawl or kneel; he can occasionally climb ramps or stairs; he is able to follow simple instructions and perform simple, repetitive tasks; he can occasionally interact with co-workers and supervisors; and he cannot have interaction with the public. (R. at 16.)

At step four, the ALJ found Plaintiff had no past relevant work. (R. at 19.) At step five, the ALJ found Plaintiff could perform jobs that exist in substantial numbers in the national economy. (R. at 20.) The ALJ cited testimony by a vocational expert that a person with Plaintiff's RFC could perform certain sedentary jobs. The ALJ indicated that those positions included document preparer, semiconductor bonder, and ampoule sealer. (R. at 20.)

**III. Analysis**

1. <u>ALJ's weighing of the evidence at step three</u>. Plaintiff contends that the ALJ failed to properly consider his obesity at step three in accordance with Titles II & XVI: Evaluation of Obesity, Social Security Ruling ("SSR") 02–1p, 2002 WL 34686281 (Sept. 12, 2002). Plaintiff asserts that the ALJ overlooked his argument that his obesity met a listed impairment. In response, the Commissioner states that the ALJ noted that no physician documented findings that are the "same or equivalent to those of any listed impairment" and that the ALJ discussed Plaintiff's obesity in connection with the RFC finding. (Doc. 12 at 4.)

At step three, the ALJ was to determine whether Plaintiff's impairment or combination of impairments either meet or equal one of the "listings" of presumptively disabling impairments. 20 C.F.R. § 416.920(a)(4)(iii). The ALJ found that Plaintiff's impairments did not meet the severity of the listings for any of the severe impairments. (R. at 14). The ALJ stated that "no treating or

7

examining physician has documented findings equivalent in severity to the criteria of any listed impairment, nor does the evidence show medical findings that are the same or equivalent to those of any listed impairment of the Listing of Impairments. In addition, neither the claimant nor the claimant's representative has alleged that the claimant's impairments would meet or equal a listing." (*Id.*) However, the ALJ's last statement is not entirely accurate. Contrary to the ALJ's finding, Plaintiff's counsel did assert that Plaintiff's obesity met or equaled a listing as set forth in SSR 02-1p. (R. at 330-31.)

While obesity by itself is not a listing, a claimant with obesity will meet the requirement of a listing if he has another "impairment that, in combination with obesity, meets the requirements of a listing." SSR 02-1p, 2002 WL 34686281 at *5. Plaintiff's counsel argued Plaintiff's obesity resulted in the inability to ambulate effectively, quoting SSR 02-1p's discussion on the potential for obesity to substitute for another listing such as major dysfunction of a joint. (R. at 331.)

The ALJ is required to "discuss the evidence and explain why he found that [a claimant] was not disabled at step three." *Fischer-Ross v. Barnhart*, 431 F.3d 729, 733 (10th Cir. 2005). The ALJ's conclusory statements regarding the step three analysis do not demonstrate that the ALJ considered the effect of Plaintiff's obesity on his other impairments. Therefore, the ALJ's finding that Plaintiff did not satisfy any of the listings at step three is not supported by substantial evidence. Although Plaintiff bears the burden of proof at step three, the ALJ must explain why a listing is not met. *Clifton v. Chater*, 79 F.3d 1007, 1009–1010 (10th Cir. 1996). Because the ALJ failed to provide the required analysis regarding the effect of Plaintiff's obesity on his other impairments, the ALJ erred at step three. *Fischer-Ross*, 431 F.3d at 733.

While the court has determined that the ALJ erred at step three, findings at other steps "may provide a proper basis for upholding a step three conclusion that a claimant's impairments do not meet or equal any listed impairment." *Id.*

2. ALJ's RFC Determination.

Plaintiff contends that the ALJ erred by failing to consider Plaintiff's obesity in relation to other impairments and his RFC. As discussed, the ALJ must assess the effects of Plaintiff's obesity in conjunction with Plaintiff's other impairments and "explain how [h]e reached [his] conclusions on whether obesity caused any physical or mental limitations." *Baker v. Barnhart*, 84 F. App'x 10, 14 (10th Cir. 2003) (citing SSR 02-01p.) While the ALJ did exhaustively discuss Plaintiff's physical impairments in connection with Plaintiff's obesity, the ALJ did not expressly discuss Plaintiff's obesity combined with his mental impairments. "Obesity may also cause or contribute to mental impairments such as depression. The effects of obesity may be subtle, such as the loss of mental clarity and slowed reactions that may result from obesity-related sleep apnea." SSR 02-1p, 2002 WL 34686281 at *3. While the ALJ "may not make assumptions about the severity or functional effects of obesity combined with other impairments," the ALJ "must evaluate each case based on the information in the case record." *DeWitt v. Astrue*, No. 09-3250, 381 F. App'x 782, 785 (10th Cir. June 2, 2010) (unpublished) (citing SSR 02-1p, 2002 WL 34686281 at *6).

With respect to Plaintiff's mental health impairments of depression and anxiety, the ALJ essentially discounted Plaintiff's testimony because the ALJ found that the lack of treatment "suggests his symptoms have not been very limiting." (R. at 18.) The ALJ stated that the "claimant said that he had previously been on Seroquel and 'it seemed to help' (11F/1). This is the only evidence of mental health treatment in the whole record." (R. at 18.) The medical records, however, show that Plaintiff received treatment for his mental health for a significant number of

years and that the reason that Plaintiff offered for not seeking treatment was because he could not afford the treatment or medication. (R. at 335-535; 547; 552; 568; 574.) Moreover, although the medical records and reports consistently refer to the mental health history, the ALJ makes no reference to the same. The court does not necessarily conclude that the ALJ must consider the treatment records prior to the onset date in determining whether Plaintiff is disabled; however, the failure to note the records and Plaintiff's proffered reason as to why he has not sought treatment is troubling in light of the fact that Plaintiff's past medical records clearly support a history of depression and anxiety. Moreover, Plaintiff testified that his medication for these impairments cause him to be drowsy. (R. at 46-47.) The medical records also support Plaintiff's claim of drowsiness with his medication. (R. at 593.)

While the issue of Plaintiff's credibility is generally an issue for the ALJ, "the issue is reviewable to ensure that the underlying factual findings are 'closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" *Hamby v. Astrue*, 260 F. App'x 108, 112 (10th Cir. 2008) (quoting *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)). The ALJ "must take into account any subjective allegations 'which can reasonably be accepted as consistent with the objective medical evidence and other evidence.'" *Id.* (quoting 113 20 C.F.R. § 404.1529(c)(3)). The ALJ should also give careful consideration to the "type, dosage, effectiveness and side effects of any medication." *Id.* at 113. Although the ALJ noted that Plaintiff was prescribed Seroquel and that Plaintiff said this medication helped, the ALJ did not discuss the side effects of this medication and whether the side effects were accommodated in the RFC.

Notably, the ALJ posed the following question to the expert: "A second hypothetical question, the person in hypothetical number two has all the limitations that the person did in hypothetical number one. But the person in hypothetical number two will be off task 20 percent

10

of the time." (R. at 51.) In response, the expert testified that such a person would be disabled as there would not be any available employment with those limitations. *Id.* The record does not identify the purpose of this question and Plaintiff's counsel suggests that it reflects the ALJ's consideration of the side effects of Plaintiff's medication. The ALJ, however, does not indicate the purpose of this question and the court will not speculate. The ALJ should have discussed the side effects of the medication and whether those side effects were consistent with medical evidence or any other evidence.

Therefore, in finding that Plaintiff was only partially credible and failing to discuss the effects of Plaintiff's medications to treat his impairments, the "ALJ applied incorrect legal standards and failed to articulate his reasoning with sufficient specificity." *Hamby*, 260 F. App'x at 113. Because the court has determined that the ALJ erred at step three[2] and in weighing the evidence to formulate Plaintiff's RFC, the ALJ must revisit this matter starting at step three. The court declines to address any further issues raised by Plaintiff as the ALJ will be free to review those issues on remand.

Therefore, this matter will be remanded. On remand, the Commissioner is free to reopen the hearing, if necessary. By remanding this case, the court does not imply that a finding of disability should be the ultimate outcome in this matter.

**IV. Conclusion**

The Commissioner's decision is REVERSED AND REMANDED. The case is remanded pursuant to the fourth sentence of 42 U.S.C. § 405(g) for further proceedings in accordance with this Memorandum and Order. The court denies Plaintiff's request to immediately award benefits. *Ragland v. Shalala*, 992 F.2d 1056, 1060 (10th Cir.1993). Plaintiff's motion for judgment on the

---

[2] Because the court has determined that this matter must be remanded for the flaws in the RFC determination, the court cannot conclude that the error on step three was harmless.

pleadings is GRANTED.  (Doc. 9.)  The clerk is directed to enter judgment in accordance with this order.

     IT IS SO ORDERED this 14th day of February, 2019.

                                                          _____s/ John W. Broomes_____
                                                          JOHN W. BROOMES
                                                          UNITED STATES DISTRICT JUDGE